**Alborz DATAR, Appellant**

v.

**NATIONAL OILWELL VARCO, L.P., Appellee**

**NO. 01–15–00541–CV**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued January 19, 2017

Rehearing En Banc Overruled May 16, 2017

Nitin Sud, Sud Law P.C., Bellaire, TX, for appellant.

Christopher E. Moore, Christine M. White, Olgetree, Deakins, Nash, Smoak & Stewart, P.C., New Orleans, LA, for appellee.

Panel consists of Justices Jennings, Keyes, and Brown.

## OPINION

Evelyn V. Keyes, Justice

Appellant, Alborz Datar, sued appellee, National Oilwell Varco, L.P. ("NOV"), for various disability discrimination and retaliation claims under the Texas Commission on Human Rights Act ("TCHRA") and the Texas Workers' Compensation Act ("TWCA"). The trial court granted summary judgment in favor of NOV, dismissing all of Datar's claims. Datar argues in three issues on appeal that the trial court erred (1) by granting NOV's traditional motion for summary judgment on his claim that NOV failed to accommodate his disability; (2) by granting NOV's traditional motion for summary judgment on his TCHRA retaliation claims; and (3) by granting NOV's no-evidence and traditional motion for summary judgment on his workers' compensation retaliation claim.

We affirm.

## Background

Datar began working as a welder for NOV at its Houston facility in 2008. Also in 2008, Datar was diagnosed with hypertension, but he continued to work as a welder for NOV and was able to perform all of his duties. As a welder, Datar's duties consisted of welding and preparing welding sites, including rigging, cutting, and grinding metal, and using a forklift to move parts. Datar worked with Jose Fuentes, a welder who was the "lead man" assigned to the day shift. At one time, Datar and Fuentes were friends who would occasionally ride to work together or socialize outside of work. The weld shop supervisor was Jesus Rangel. Datar had positive performance reviews throughout his employment at NOV, and he was given a raise in February 2013.

On May 10, 2013, Datar was injured at work. He reported the incident to NOV's safety department the next day. The Incident Summary prepared by Rangel following Datar's injury and sent to his supervisors described his injury as a "slight pain in [his] lower back," and it stated that Datar "refused medical treatment" and had "minor soreness" in his lower back. A week later, Datar's pain level was the same. Datar visited a doctor on four occasions following his injury. He was diagnosed with a lower-back sprain. He was not prescribed any medication, but he would perform stretches to treat his inju-

ry. Following his visits to the doctor, he was discharged and permitted to work "without restrictions." His workers' compensation work status report, dated May 16, 2013, also stated that he was permitted to return to work without work restrictions. Datar obtained workers' compensation benefits following this injury.

Datar stated that although his back injury made it "harder" to do things like walking, sitting down, and picking things up, "[i]t doesn't prevent it."

On May 13, 2013, Datar filed a complaint against Fuentes, claiming that Fuentes tried to pull down his pants at work during work hours. Datar also complained that Fuentes engaged in other "unprofessional" conduct, namely that on one occasion Fuentes "[struck] an arc with a stick rod in close proximity" to Datar and that on another occasion Fuentes blew hot flux toward him. However, Fuentes' attempt to pull down Datar's pants was the only incident that Datar considered sexual in nature. NOV's human resources department acknowledged his complaint regarding Fuentes' behavior and conducted an investigation.

On May 20, 2013, Datar asked Rangel for time off the following Sunday and Monday, over Memorial Day weekend, "to rest because of his back injury." Rangel refused to grant him the time off. However, Datar subsequently visited an emergency room and called in sick on Sunday, May 26, 2013. Thus, Datar did not work either May 26 or May 27, 2013.

On May 31, 2013, after the investigation into Datar's allegations concluded, human resources personnel informed Datar that NOV could not substantiate his sexual harassment complaint against Fuentes and that Datar had to continue working with Fuentes as his "lead man," i.e., his direct supervisor. NOV indicated that Fuentes was the only lead man on the day shift at that facility. Datar refused to continue working under Fuentes' supervision, telling the human resources personnel that he refused to work with someone that he "did not respect" and that he was uncomfortable working with somebody who had previously harassed him. Human resources informed Datar that he had to report to the lead man and told Datar to take the weekend off to think about whether he "want[ed] to go down this road because [he had] to report to [his] lead man."

On June 3, 2013, Datar returned to the office and attended a second meeting with the human resources department. Human resources personnel told Datar that if he refused to work with Fuentes as his lead man, he was refusing to do his job. Datar explained that he wanted to do his job, just not under Fuentes' supervision as the lead man. Datar also testified in his deposition that he never asked to be transferred, and he stated that he was "not at all" interested in working on the night shift or transferring to a different location. NOV terminated Datar's employment for insubordination. Datar stated in his deposition that if he had agreed to continue working with Fuentes he could "possibly" have kept his job.

Regarding its unofficial progressive discipline policy, NOV's senior human resources manager, Lonny Allchin, testified in a deposition that NOV engages in a progressive discipline practice, consisting of issuing a "verbal warning, [a] written warning, [and a] final warning" prior to taking an adverse action against an employee. Allchin testified that the progressive discipline policy "can" apply to employees who are insubordinate and that such employees "may" get "a verbal or write-up or final warning." However, he also testified that an employee may be terminated for insubordination without applying the progressive discipline practice

in "extreme cases." Datar also presented evidence of various written warnings provided to three other employees for behavior including being disruptive, using foul language, not following instructions well, performing substandard work, refusing to complete a project assigned by a manager, and ignoring a direct request to perform a particular task. None of these warnings addressed a circumstance in which an NOV employee refused to work with a particular supervisor, and Datar provided no evidence that any such similarly-situated employee existed.

On February 3, 2014, Datar filed suit against NOV asserting claims for disability discrimination based on NOV's alleged failure to accommodate his disability, retaliation under the TCHRA for Datar's making a sexual harassment complaint, and retaliation under the TWCA.[1]

Datar moved for partial summary judgment on the ground that he had a disability and that NOV was aware of his disability.

NOV moved for traditional summary judgment on all three of Datar's claims, and it moved for no-evidence summary judgment on Datar's TWCA retaliation claim.

The trial court granted NOV's motions for summary judgment, and this appeal followed.

## Summary Judgment Standard of Review

■■■ We review a trial court's ruling on a summary judgment motion de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). To prevail on a traditional summary judgment motion, the movant bears the burden of proving that no genuine issues of material fact exist and

that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Cleveland v. Taylor*, 397 S.W.3d 683, 697 (Tex. App.–Houston [1st Dist.] 2012, pet. denied). If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (stating that summary judgment evidence raises fact issues if reasonable and fair-minded jurors could differ in their conclusions in light of all evidence presented).

■■■ To determine if the nonmovant raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827); *Cleveland*, 397 S.W.3d at 697. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)); *Cleveland*, 397 S.W.3d at 697.

■■■ We must affirm a summary judgment order if any of the grounds presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Cleveland*, 397 S.W.3d at 697.

1. Datar also alleged a cause of action for retaliation for requesting a disability accommodation under the TCHRA that he later voluntarily dismissed.

**Reasonable Accommodation Claim**

In his first issue, Datar argues that the trial court erred in granting summary judgment on his claim that NOV failed to provide a reasonable accommodation for a known disability.

## A. Standard of Review

██ An employer violates Labor Chapter 21 any time it "fail[s] or refuse[s] to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability who is an employee. . . ." TEX. LAB. CODE ANN. § 21.128(a) (West 2015). Thus, to establish a failure to accommodate claim, an appellant must show that: "(1) [he] is an individual with a disability; (2) the employer had notice of the disability; (3) with reasonable accommodations [he] could perform the essential functions of [his] position; and (4) . . . the employer refused to make such accommodations." *Tex. Dep't. of State Health Servs. v. Rockwood*, 468 S.W.3d 147, 154–55 (Tex. App.–San Antonio 2015, no pet.) (citing *Tex. Dep't of Family & Protective Servs. v. Howard*, 429 S.W.3d 782, 789 (Tex. App.–Dallas 2014, pet. denied)). The burden-shifting framework set out in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is not applicable to a reasonable accommodation claim. *Id.* 155; *see also Davis v. City of Grapevine*, 188 S.W.3d 748, 758–59 (Tex. App.–Fort Worth 2006, pet. denied) (relying on *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1283–84 (7th Cir. 1996)).

"Disability" is defined, in relevant part, as "a mental or physical impairment that substantially limits at least one major life activity of that individual." TEX. LAB. CODE ANN. § 21.002(6) (West 2015). The term "disability" must be construed broadly. *Id.* § 21.0021(a)(1) (West 2015). "Major life activity" is not defined in the statute. *See id.* § 21.002(11–a) (providing only list of examples of major life activities); *see also Little v. Texas Dep't of Criminal Justice*, 148 S.W.3d 374, 382 (Tex. 2004) (holding that "both the federal court decisions interpreting the [Americans with Disabilities Act ("ADA") ] and the federal administrative regulations regarding the ADA guide our interpretation of the definition of 'disability' contained in chapter 21"). However, federal courts have held that, to prove a substantial limit to a major life activity, "[e]vidence of a medical diagnosis of impairment, standing alone, is insufficient to prove a disability." *Ramos–Echevarria v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir. 2011).

██ To survive summary judgment, a plaintiff must produce evidence demonstrating that his impairment is profound enough and of sufficient duration, given the nature of his impairment, to significantly restrict him in working. *Carroll v. Xerox Corp.*, 294 F.3d 231, 240 (1st Cir. 2002); *see also Chevron Corp. v. Redmon*, 745 S.W.2d 314, 318 (Tex. 1987) (holding that disability "must be one which is generally perceived as severely limiting [the plaintiff] in performing work-related functions in general").

Texas courts have held that an impairment "substantially limit[s]" a person's major life activity when he is:

> [u]nable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Howard*, 429 S.W.3d at 787 (quoting *Thomann v. Lakes Reg'l MHMR Ctr.*, 162

S.W.3d 788, 796 (Tex. App.–Dallas 2005, no pet.)); *see Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 480, 119 S.Ct. 2139, 2145–46, 144 L.Ed.2d 450 (1999). A determination about whether an impairment "substantially limits" a major life activity must be made "without regard to the ameliorative effects of mitigating measures," including medication. TEX. LAB. CODE ANN. § 21.0021(b)(1).

**B. Analysis**

Here, NOV moved for summary judgment in part on the ground that Datar did not have a disability as defined by the Texas Labor Code. It asserted that neither his hypertension nor his lower-back injury substantially limited a major life activity and that Datar was able to perform his work duties throughout his employment at NOV.

Datar identifies two conditions that he contends are disabilities within the meaning of the TCHRA. He argues that his hypertension affected his ability to work and that his lower-back injury also affected his ability to work, sit down, pick things up, and walk. Datar did not provide evidence sufficient to raise a fact question that either of these conditions substantially limited a life activity or otherwise impaired him in performing work-related functions.

*1. Lower-back sprain*

██ NOV argued in its summary judgment motion that Datar's lower-back sprain did not constitute a disability. The Incident Summary prepared following Datar's injury on May 10, 2013, and sent to his supervisors described his injury as a "slight pain in [his] lower back," and it stated that he "refused medical treatment" and had "minor soreness" in his lower back. A week later, Datar's pain level was the same. Datar visited a doctor on four occasions following his injury, and each time, he was discharged and permitted to work "without restrictions." His workers' compensation work status report, dated May 16, 2013, also stated that he was permitted to return to work without work restrictions. NOV asserted that there was no evidence that his back pain impaired his ability to work or substantially limited any major life activities.

Datar asserts that his back injury constitutes a disability. He testified that his lower back injury made it "harder" for him to "sit down, pick things up, and walk." But evidence that an activity is "harder" is not the same as evidence demonstrating a substantial limit on activity. Datar presented no evidence that his back pain substantially limited him from engaging in any of the activities of daily living. *See Thomann*, 162 S.W.3d at 798. Rather, Datar's claim is contrary to the summary judgment evidence regarding his ability to work following his back sprain. Datar's doctor released him to return to work without restrictions, and Datar himself acknowledged that, although his back injury made it "harder" to do things like walking, sitting down, and picking things up, "[i]t doesn't prevent it."

Other courts have held that there is no evidence of a disability when back pain or a back injury does not rise to a level that substantially limits a major life activity or otherwise impairs a plaintiff from performing job-related activities. *See id.* (no disability when plaintiff had twenty pound lifting restriction but failed to demonstrate that such restriction "substantially limited her from engaging in any of the activities of daily living"); *see also Pegram v. Honeywell, Inc.*, 361 F.3d 272, 286 (5th Cir. 2004) (no disability when plaintiff claimed his "degenerative disk disease" "impaired [him] in climbing stairs, walking, standing for longer than five minutes, sitting for longer than five minutes, with balance, and pain[,]" but evidence showed

that he did not obtain single absence for his condition and was not placed on any work restriction).

We conclude that Datar failed to raise a fact question concerning whether his back injury constituted a disability that would entitle him to recover on his claim that NOV failed to make a reasonable accommodation of his disability. *See* Tex. Lab. Code Ann. § 21.128(a); *Rockwood*, 468 S.W.3d at 154–55 (holding that, to establish failure to accommodate claim, appellant must show, in part, that he is an individual with a disability); *see also Centeq Realty*, 899 S.W.2d at 197 (holding that if movant meets its burden, nonmovant must raise genuine issue of material fact precluding summary judgment).

### 2. *Hypertension*

Regarding his hypertension, NOV presented evidence, in the form of Datar's own deposition testimony, that Datar was diagnosed with high blood pressure in 2008, while he was working for NOV as a welder, and that, prior to his back injury in 2013, he was "able to perform [his] job with NOV as a welder at all times." Datar conceded in his deposition that he did not recall asking for time off "specifically because" of his hypertension at any point in the last year of his employment with NOV. Thus, NOV established that Datar's hypertension did not significantly restrict him in working or "severely limit[ ] [him] in performing work-related functions in general." *See Redmon*, 745 S.W.2d at 318; *Carroll*, 294 F.3d at 239. Datar testified that he believed his high blood pressure impacted his ability to "work long hours," because longer hours, combined with stress, "would contribute to a higher blood pressure." He stated that his blood pressure would cause him to get "dizzy, tired, light-headed, and feel weak." He also stated that, on unspecified occasions, he had

asked for time off when "working too much [had affected his] blood pressure."

None of this testimony demonstrates that Datar's high blood pressure substantially limited a life activity or impaired him in his ability to work in general. While he testified that his hypertension affected his life, he provided no evidence that the effect of his hypertension rose to a substantial impairment. *See Carroll*, 294 F.3d at 238 (holding that it is insufficient to merely submit evidence of medical diagnosis without evidence that extent of limitation caused by impairment in terms of plaintiff's own experience is substantial). Thus, Datar failed to put forth any evidence raising a fact question that his hypertension substantially limited his ability to work at NOV as a welder or that it substantially limited a major life activity. *See Redmon*, 745 S.W.2d at 318; *Howard*, 429 S.W.3d at 787.

Moreover, several federal courts construing the analogous ADA have held that an assertion of disability based solely on a diagnosis of hypertension, without any showing that the condition substantially limited work activities or major life activities, generally is insufficient to establish the existence of a disability for discrimination purposes. *See Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 92 (5th Cir. 1996) ("[H]igh blood pressure alone, without any evidence that it substantially affects one or more major life activities, is insufficient to bring an employee within the protection of the ADA."); *Murphy v. United Parcel Serv., Inc.*, 946 F.Supp. 872, 881 (D. Kan. 1996), *aff'd*, 141 F.3d 1185 (10th Cir. 1998), *aff'd*, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (finding no disability when plaintiff "want[ed] [a] finding of disability based on nothing more than a physician's general diagnosis [of high blood pressure] without any evidence that the plaintiff's condition substantially limited

her work activity"); *Nowak v. EGW Home Care, Inc.*, 82 F.Supp.2d 101, 111 (W.D.N.Y. 2000) ("[S]everal courts have found that [high blood pressure] alone, without any evidence that it substantially affects a major life activity, does not constitute a disability under the ADA."); *see also Little*, 148 S.W.3d at 382 (federal court decisions interpreting ADA "guide our interpretation of the definition of 'disability' contained in chapter 21").

We hold that Datar failed to raise a fact question as to whether any of the injuries he relies upon constituted a disability within the meaning of the TCHRA.

We overrule Datar's first issue.

## TCHRA & TWCA Retaliation Claims

In his second issue, Datar alleges that the trial court erred in granting summary judgment on his retaliation claims under the TCHRA. In his third issue, Datar argues that the trial court erred in granting NOV's motion for summary judgment on his claim for retaliation under the TWCA.

### A. Retaliation Under the TCHRA

Under Chapter 21, employers are not permitted to retaliate or discriminate against a person who engages in a protected activity under that Chapter. Tex. Lab. Code Ann. § 21.055 (West 2015). Section 21.055 provides, "[A]n employer ... commits an unlawful employment practice if the employer ... retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." *Id.*; *Anderson v. Hous. Cmty. Coll. Sys.*, 458 S.W.3d 633, 647 (Tex. App.–Houston [1st Dist.] 2015, no pet.).

When, as here, there is no direct evidence of retaliation, the employee must make out a prima facie case under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green.* 411 U.S. at 802–05, 93 S.Ct. at 1824–26; *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 822–23 (Tex. App.–Houston [1st Dist.] 2012, pet. denied); *see also* Tex. Lab. Code Ann. § 21.001(1) (West 2006) (purpose of Chapter 21 is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments"); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999) (TCHRA is "modeled after federal civil rights law" and thus Texas courts "look to analogous federal precedent for guidance when interpreting the Texas Act"). Within the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487, 493–94, 497–98 (Tex. App.–Dallas 2013, no pet.) (applying *McDonnell Douglas* burden-shifting analysis to retaliation claim).

To establish a prima facie case of retaliation under the TCHRA, a plaintiff must show that (1) he participated in a protected activity, (2) his employer took an adverse employment action against him, and (3) a causal connection existed between his protected activity and the adverse employment action. *Chandler*, 376 S.W.3d at 822; *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.–Houston [14th Dist.] 2007, pet. denied). The employee must establish that, absent his protected activity, the adverse employment action would not have occurred when it did. *See Gumpert v. ABF Freight Sys., Inc.*, 293 S.W.3d 256, 262 (Tex. App.–Dallas 2009, pet. denied). However, the employee "need not establish that the protected activity

was the sole cause of the employer's prohibited conduct." *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 377 (Tex. App.–Fort Worth 2006, no pet.).

Circumstantial evidence sufficient to show a causal link between an adverse employment decision and the protected activity may include: (1) the employer's failure to follow its usual policy and procedures in carrying out the challenged employment actions; (2) discriminatory treatment in comparison to similarly situated employees; (3) knowledge of the discrimination charge or suit by those making the adverse employment decision; (4) evidence that the stated reason for the adverse employment decision was false; and (5) the temporal proximity between the employee's conduct and discharge. *Crutcher*, 410 S.W.3d at 494.

Under the *McDonnell Douglas* burden shifting analysis, "[t]he burden of going forward then shifts to the employer to 'articulate some legitimate, non-discriminatory reason for the employee's rejection.'" *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). The offer of a legitimate reason eliminates any presumption of discrimination created by the plaintiff's prima facie showing, and the burden then shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 805–07, 93 S.Ct. at 1826–27, and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981)). "Although the burden of production shifts between the parties, the burden of persuasion 'remains continuously with the plaintiff.'" *Chandler*, 376 S.W.3d at 814 (quoting *Greathouse v. Alvin Indep. Sch. Dist.*, 17 S.W.3d 419, 423

(Tex. App.–Houston [1st Dist.] 2000, no pet.)).

To raise a fact issue on the pretext element of a discrimination or retaliation claim, the nonmovant must present evidence " 'indicating that the non-discriminatory reason given by the employer is false or not credible, and that the real reason for the employment action was unlawful discrimination.' " *Id.* (quoting *Elgaghil v. Tarrant Cty. Junior Coll.*, 45 S.W.3d 133, 140 (Tex. App.–Fort Worth 2000, pet. denied)). "A plaintiff can avoid summary judgment if the evidence, taken as a whole, creates a fact issue 'as to whether each of the employer's stated reasons was not what actually motivated the employer and creates a reasonable inference' " that employer acted with the intent to discriminate or retaliate. *Id.*; *see also Little*, 177 S.W.3d at 632 ("[T]he United States Supreme Court has made it clear that it is not sufficient merely to show that the employer's reasons are false or not credible; the plaintiff must prove that the employer discriminated intentionally.") "An employee's subjective belief that his employer has given a false reason for the employment decision is not competent summary judgment evidence." *Chandler*, 376 S.W.3d at 814; *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 731 (Tex. App.–Fort Worth 2006, no pet.).

## B. Retaliation Under the TWCA

Under the TWCA, an employer may not discharge or in any other manner discriminate against an employee because that employee has filed a good faith workers' compensation claim. TEX. LAB. CODE ANN. § 21.055. The plaintiff has the burden of establishing a causal connection between his firing and his filing of a worker's compensation claim; this connection is only established if it is shown that plaintiff would not have been fired "but for" his

protected act. *Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 54 (Tex. App.–Houston [1st Dist.] 2011, pet. denied) (citing *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450–51 (Tex. 1996)). The employee's participation in the protected activity does not need to be proven as the sole cause of the employment action. *Id.*

■ Similarly to a retaliation claim under the TCHRA, once a prima facie claim is established, the burden shifts to the employer to provide a "legitimate, non-discriminatory reason for its actions," after which the burden shifts back to the employee to " 'produce controverting evidence of a retaliatory motive' in order to survive a motion for summary judgment." *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 67 (Tex. App.–Houston [1st Dist.] 2011, pet. denied) (quoting *Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 519 (Tex. App.–Houston [1st Dist.] 2006, pet. denied)).

## C. Analysis

NOV asserts that Datar cannot establish a prima facie case of retaliation under either the TCHRA or the TWCA. It argues, in part, that Datar's act of reporting Fuentes' attempt to pull down his pants did not constitute an activity protected by the TCHRA. *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015) (setting out elements of retaliation claim under TCHRA; stating, "[T]o establish an employee opposed a discriminatory practice, the employee must demonstrate a good-faith, reasonable belief that the underlying discriminatory practice *violated the TCHRA*"; and holding that sexual harassment must be offensive and " 'so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment' " to be fall under TCHRA protections) (emphasis added) (quoting *Clark Cty. Sch. Dist. v.*

*Breeden*, 532 U.S. 268, 270, 121 S.Ct. 1508, 1509, 149 L.Ed.2d 509 (2001) (per curiam)); *Houston Methodist San Jacinto Hosp. v. Ford*, 483 S.W.3d 588, 592–93 (Tex. App.–Houston [14th Dist.] 2015, pet. denied) ("A subjective belief of sexual harassment, alone, is insufficient. ... 'Offhand comments and isolated incidents, unless extremely serious, typically will not amount to discriminatory changes in the terms, conditions, or privileges of employment' [and] [i]solated yet offensive sexual conduct ... does not itself constitute discrimination that alters a term, condition, or privilege of employment.") (quoting *Nicholas*, 461 S.W.3d at 138).

And NOV argues that, under the TWCA, Datar cannot show that he would not have been fired "but for" his filing of a worker's compensation claim because his own conduct in refusing to report to Fuentes as his supervisor was the cause of his termination. *See Barousse*, 365 S.W.3d at 54 (plaintiff must establish causal connection between his firing and his filing of a worker's compensation claim, i.e. that he would not have been fired "but for" his protected act).

■ We need not address these arguments by NOV. Even assuming that Datar could establish a prima facie case of retaliation under the TCHRA or the TWCA, the burden then shifted to NOV to provide a non-discriminatory, non-retaliatory reason for its actions. *See Chandler*, 376 S.W.3d at 822–23 (setting out burden-shifting analysis in TCHRA context); *Parker*, 365 S.W.3d at 67 (setting out burden-shifting analysis in TWCA context). NOV did so here, and Datar failed to produce controverting evidence that NOV's non-discriminatory or non-retaliatory reason was false or not credible and that its real motive was unlawful retaliation, as required to survive summary judgment on either of these

claims. *See Chandler*, 376 S.W.3d at 822–23; *Parker*, 365 S.W.3d at 67.

NOV presented evidence that it fired Datar for refusing to work under the only "lead man" on the day shift. It also established that Datar was not willing to work on the night shift, where he would have had a different lead man. Datar himself acknowledged that, following an investigation, NOV determined that it could not substantiate his sexual harassment claim against Fuentes and that human resources personnel informed him that he would be required to continue working with Fuentes as the lead man on the day shift. Datar stated that he would not work for Fuentes. NOV's human resources personnel told him to take the weekend off and think about the situation. He returned on June 3, 2013, and again informed NOV that he would not work for Fuentes. He also testified that he was "not at all" interested in transferring to the night shift or to a different facility. NOV terminated Datar for insubordination.

This evidence establishes that NOV articulated a legitimate, non-discriminatory or non-retaliatory reason for terminating Datar. *See Chandler*, 376 S.W.3d at 814; *Parker*, 365 S.W.3d at 67. Because NOV met its burden, to survive summary judgment, Datar was required to produce some evidence demonstrating that NOV's articulated reason for terminating him was pretextual. *See Chandler*, 376 S.W.3d at 814; *Parker*, 365 S.W.3d at 67.

██ Datar failed to provide even a scintilla of evidence to controvert NOV's assertion. Datar points to the fact that he told his employers that he just wanted to do his job. However, Datar made that statement after being told that refusing to accept Fuentes as his lead man constituted a refusal to do his job. And he does not dispute that he refused to work for Fuentes, that he was not willing to move to the night shift, and that he was not willing to consider a transfer to a different facility.

Datar also argues that NOV's decision to fire him violated its progressive discipline policy and constituted evidence of NOV's retaliation against him for filing a sexual harassment claim. *See Crutcher*, 410 S.W.3d at 494 (holding that employer's failure to follow its usual policy and procedures in carrying out challenged employment actions is circumstantial evidence sufficient to show causal link between adverse employment decision and protected activity in making prima facie case of retaliation under TCHRA). Here, contrary to Datar's assertion, the evidence does not demonstrate that NOV deviated from its unofficial, unwritten progressive discipline practice. Allchin testified that although NOV typically engages in a progressive discipline practice—consisting of issuing a "verbal warning, [a] written warning, [and a] final warning" prior to taking an adverse action against an employee—he also testified that an employee may be terminated for insubordination without applying the progressive discipline practice in "extreme cases." On May 31, 2013, human resources personnel informed Datar that if he refused to work for Fuentes, he was refusing to do his job, and they told Datar to take the weekend off to think about the situation. When Datar returned on June 3 and continued to refuse to work with Fuentes, NOV terminated his employment. Datar provided no evidence of NOV's discipline practice regarding any similarly-situated employee engaging in refusal to work for a particular supervisor.

██ Furthermore, once NOV articulated a non-retaliatory reason for Datar's firing, Datar's burden shifted and he was required to prove—beyond his prima facie case—that NOV's stated reason was false or incredible. *See Chandler*, 376 S.W.3d at

314; *Parker*, 365 S.W.3d at 67. The issue at the pretext stage is not whether the employer made an erroneous decision; it is whether the decision, even if incorrect, was the real reason for the employment determination. *Crutcher*, 410 S.W.3d at 497 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)). "The employer 'is entitled to be unreasonable so long as it does not act with discriminatory animus.'" *Id.* (quoting *Sandstad*, 309 F.3d at 899). An employee who intends to show that the offered explanation is so unreasonable it must be pretextual bears the burden of proffering evidence creating a fact issue regarding reasonableness. *Id.*

Datar has provided no evidence that NOV's actions here, in terminating his employment without providing prior written notice, had a retaliatory motive, as required to survive summary judgment after NOV introduced evidence of a non-retaliatory reason for Datar's termination. *See id.* Datar provides no evidence that NOV's actions in firing him were so unreasonable as to be pretextual, nor does he provide any evidence that NOV's departure from its discipline policy, even if incorrect, was motived by unlawful retaliation. *See id.* Nothing in his summary judgment evidence serves to meet his burden to establish that NOV's stated reason for firing him—namely, his refusal to work for Fuentes or consider a transfer—was not the real reason that he was fired. *See id.*; *Chandler*, 376 S.W.3d at 823 ("'[A]n employee's subjective beliefs of retaliation are merely conclusions and do not raise a fact issue precluding summary judgment in a retaliatory discharge claim.'") (quoting *Nui*, 206 S.W.3d at 731); *Parker*, 365 S.W.3d at 67.

We overrule Datar's second and third issues.

## Conclusion

We affirm the judgment of the trial court.