Opinion issued August 15, 2024



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00221-CV

———————————

**JONATHAN JOHNSON, Appellant**

**V.**

**CAPSTONE LOGISTICS, LLC, Appellee**

---

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-79901**

---

## MEMORANDUM OPINION

In this employment discrimination case, appellant Jonathan Johnson appeals from the trial court's grant of appellee Capstone Logistics, LLC's (Capstone) traditional and no-evidence motions for summary judgment. In three issues, Johnson

challenges the trial court's grant of summary judgment as to his disability discrimination, harassment,[1] and retaliation claims. We affirm.

## Background

Johnson began working for Capstone in January 2018 as a shift supervisor. Johnson contends that while working on May 15, 2018, he began experiencing severe dizziness and a headache. He proceeded to the emergency room, where the physician advised him that his blood pressure was extremely high and that he was at risk for a stroke. After medication and monitoring, the physician released Johnson with instructions to follow up with his primary care physician. He advised Johnson not to return to work until his primary doctor made an assessment.

That same day, Johnson advised his supervisor, Jeff Javorsky, of the physician's instructions and requested time off. Johnson's primary care physician referred him to a cardiologist, who he saw a few days later. Ultimately, Johnson's cardiologist released him to return to work on May 24, 2018.

According to Johnson, when he returned to work, his coworkers advised him that during a pre-shift meeting, a shift supervisor, Brian Polone, stated that "he

[1]   In the "Issues Presented" section of his principal brief, Johnson characterizes his second issue as challenging the trial court's grant of summary judgment as to his age discrimination claim. However, the subsequent discussion concerns Johnson's disability-based harassment claim, and the phrase "age discrimination" does not appear again in his briefing. Therefore, we construe Johnson's second issue as challenging the trial court's determination regarding the disability-based harassment claim.

planned to do whatever he had to do to make Mr. Johnson's blood pressure go up so high that he'd leave and not return." Johnson contends he reported this to Javorsky, who did nothing.

When Johnson continued to experience dizziness and headaches, he returned to his primary doctor on June 7, 2018, who kept Johnson off work until he could see his cardiologist on June 11, 2018. Johnson alleges that after providing his June 7, 2018 doctor's note to Javorsky, Javorsky "told Mr. Johnson that he needed to figure out how his shifts were going to be covered," that he "was tired of dealing with his issues," and "abruptly hung up on Mr. Johnson."

Johnson returned to work on June 11, 2018. He claims that on June 13, 2018, he reported dizziness and headache to Javorsky "following a heated verbal confrontation with Mr. Johnson's subordinate employee and shift lead, Kenneth Malveaux." According to Johnson, Malveaux began "yelling," "cursing," and "shouting" at him when he needed to leave a loud work area to speak with a client. However, Johnson completed his shift that day.

On June 14, 2018, Johnson experienced "extremely high" blood pressure and continued to experience severe dizziness and headache. He reported these concerns to Javorsky and requested off work. The following day, Johnson notified Javorsky that he was feeling better and would report to work that day. According to Johnson, in response, Javorsky "told Mr. Johnson to stay home and that he was being

3

suspended for his medical absences." Javorsky advised Johnson to call in to the office the following Monday.

Johnson contends that he made complaints to Capstone's human resources department concerning Javorsky's comments on June 15, 2018. Specifically, Johnson alleges that he reported Javorsky's "adverse comments and actions regarding his medical condition, disability, and age" as well as "Javorsky's complaints about [Johnson's] request to accommodate his medical condition and his suspension for absences related to his medical condition." Johnson also reported the shift supervisor's comments about his intent to increase Johnson's blood pressure, his report of that comment to Javorsky, and Javorsky's inaction. Johnson outlined these complaints in an e-mail titled "Statement" that he sent to human resources on June 15, 2018.

On June 18, 2018, Johnson called Javorsky as instructed. According to Johnson, Javorsky advised Johnson that he had been terminated for missing too much work. Immediately thereafter, Johnson contacted human resources and spoke with Patricia Boyd, who confirmed Johnson was terminated for excessive actions. Johnson pointed out that his absences were due to his medical condition, which he had previously reported to his supervisor and human resources. Johnson also noted his prior complaints of "harassment, discrimination, and retaliation" from Javorsky, which he contended were the result of his request for accommodation for his medical

4

condition. At that time, Johnson requested a transfer to another facility, but Boyd advised that she needed to investigate such an option.

Johnson claims that Boyd compared attendance and medical records submitted by Javorsky with Johnson's records. She reinstated his employment and requested that he provide further documentation from his medical provider. After doing so, Johnson applied for and received four weeks of leave pursuant to the Family and Medical Leave Act (FMLA).

When Johnson returned to work on July 19, 2018, he followed up with Boyd regarding a possible transfer. Boyd instructed him to ask Javorsky, who denied the request.

Johnson alleges that upon his return to work, Javorsky began excluding him from pre-shift meetings, which Johnson previously conducted as part of his duties as Shift Supervisor. Javorsky purportedly told Johnson not to attend these meetings and then directed Malveaux, Johnson's subordinate, to conduct the meetings.

Johnson contends that he used bereavement leave, per company policy, from August 1, 2018 to August 3, 2018 following the death of his mother. On August 22, 2018, Johnson left work early for a family emergency. On August 23, 2018, Javorsky advised Johnson he was fired.

Johnson filed a complaint with the Equal Employment Opportunity Commission (EEOC), and the EEOC issued a right-to-sue letter on September 4,

5

2019.[2] Johnson filed the instant suit against Capstone on November 1, 2019, asserting claims for harassment, discrimination, and retaliation based on age and disability pursuant to the Texas Commission on Human Rights Act (TCHRA). *See* TEX. LAB. CODE §§ 21.051, 21.055, 21.056. Johnson further contended that Capstone harassed, discriminated, and retaliated against him for exercising his rights under the FMLA.[3]

Capstone filed an answer to Johnson's suit on December 6, 2019, asserting a general denial and raising various affirmative defenses. Capstone then filed a combined traditional and no-evidence summary judgment motion on December 22, 2021 as to all of Johnson's remaining causes of action. The trial court granted Capstone's motion on December 27, 2022, and this appeal followed.

### Standard of Review

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When a party moves for both traditional and no-evidence summary judgment, we first review the trial court's ruling under the no-evidence standard of

---

[2]    The record does not contain a copy of Johnson's EEOC complaint.
[3]    The record reflects that Capstone removed the case to federal court, but after the federal district court granted summary judgment in Capstone's favor on the FMLA-related claims, the case was remanded to state court for consideration of the remaining state law claims.

review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court properly granted the no-evidence motion, we do not consider the arguments raised regarding the traditional summary judgment motion. *See id.*

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant the motion unless the nonmovant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Flameout Design & Fabrication*, 994 S.W.2d at 834; *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) ("An appellate court reviewing a summary judgment must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented."). To determine if the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289

7

S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Crim. Just.*, 148 S.W.3d 374, 381 (Tex. 2004). When, as here, the trial court's summary judgment does not state the basis for the court's decision, we must uphold the judgment if any of the theories advanced in the motion are meritorious. *Knott*, 128 S.W.3d at 216.

### Disability Discrimination

**A.    Applicable Law**

To establish a prima facie case of disability discrimination under the TCHRA, Johnson needed to show that he: (1) has a disability, (2) is qualified for the job, and (3) suffered an adverse employment decision because of his disability. *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 436–37 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex. App.—Fort Worth 2006, pet. denied)). Capstone argues that the trial court properly granted its motion for summary judgment because Johnson is not

disabled, but even if he was, he failed to demonstrate he was fired solely because of his disability.

The TCHRA defines "disability" as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." TEX. LAB. CODE § 21.002(6). The TCHRA does not define "major life activity" but provides numerous examples, including but not limited to:

> caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. The term also includes the operation of a major bodily function, including, but not limited to, functions of the immune system, normal cell growth, and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

*Id.* § 21.002(11-a). An impairment "substantially limits" a person's major life activity when he is:

> [u]nable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Datar v. Nat'l Oilwell Varco, L.P.*, 518 S.W.3d 467, 474 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (quoting *Tex. Dep't of Fam. & Protective Servs. v. Howard*, 429 S.W.3d 782, 787 (Tex. App.—Dallas 2014, pet. denied)). "To survive summary judgment, a plaintiff must produce evidence demonstrating that his impairment is

9

profound enough and of sufficient duration, given the nature of his impairment, to significantly restrict him in working." *Id.* (citations omitted).

**B.    Analysis**

Here, Johnson identifies his disability as high blood pressure and contends that if uncontrolled, it impacts the major life activities of working, circulatory system function, and interacting with others. Johnson did not provide sufficient evidence to raise a fact question that his high blood pressure substantially limited a major life activity or otherwise impaired him in performing work-related functions.

As to his allegation that his hypertension substantially limited the major life activities of "interacting with others" or "circulatory system function," Johnson points to no specific evidence, nor does he explain how his hypertension impacted those activities. Because Capstone has argued that Johnson has no evidence to support a disability discrimination claim (specifically, the disability element of his prima facie case), Johnson bore the burden to come forth with specific evidence to support his claim. *See Donaldson*, 495 S.W.3d at 432 (citing TEX. R. CIV. P. 166a(i); *Tamez*, 206 S.W.3d at 582). Such a burden is not satisfied by conclusory allegations or unfounded assertions. *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021); *see also Greathouse v. Alvin Indep. Sch. Dist.*, 17 S.W.3d 419, 425 (Tex. App.— Houston [1st Dist.] 2000, no pet.) (holding, in racial discrimination case, that summary judgment for defendant is proper when plaintiff presents only conclusory

allegations, improbable inferences, unsupportable speculation, or subjective beliefs and feelings); *Espinoza v. Brennan*, No. EP-14-CV-290-DB, 2016 WL 7176663, at *7 (W.D. Tex. Dec. 7, 2016) (determining that plaintiff's allegations that his disorders "caused . . . difficulty in his interpersonal relationships, [and] also affected his work relationships" was insufficient to meet low threshold of proof that impairment affects major life activity).

The summary judgment evidence—including Johnson's own deposition testimony—establishes that Johnson was diagnosed with high blood pressure in 2010 but did not seek medical treatment or require medication for his condition for much of that time. Regarding his ability to work, Johnson testified that his high blood pressure symptoms (dizziness, headaches) never interfered with his work for any employers prior to Capstone. He further admitted that at the time Capstone hired him, he did not have a disability that would preclude him from performing the essential functions of his job. Johnson's testimony indicates that he only experienced four blood-pressure related incidents from 2013 to 2018. Ultimately, Johnson's symptoms became sufficiently controlled by medication, and his physician certified him to return to work full duty, without restrictions, in July 2018. Following his termination from Capstone, Johnson worked other similar warehouse supervisor jobs, and he testified that he was able to perform the duties of those positions without limitations so long as he took his blood pressure medication.

11

To demonstrate that an alleged disability substantially limits the major life activity of working, an individual must show that he is "unable to perform the variety of tasks central to most people's daily lives" or that "his impairment 'severely limit[s] him in performing work-related functions in general.'" *City of Hous. v. Proler*, 437 S.W.3d 529, 533 (Tex. 2014) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200 (2002); *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 318 (Tex. 1987)). The Texas Supreme Court has confirmed that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* at 534; *see also Williams*, 534 U.S. at 200 ("[E]ven assuming that working is a major life activity, a claimant would be required to show an inability to work in a 'broad range of jobs,' rather than a specific job.") (citation omitted). Johnson has failed to make such a showing; thus, the trial court correctly granted summary judgment in favor of Capstone as to Johnson's disability discrimination claim. *See Fenley v. Tex. Plumbing Supply Co.*, No. 14-19-00851-CV, 2021 WL 1881273, at *7 (Tex. App.—Houston [14th Dist.] May 11, 2021, no pet.) (mem. op.) (holding that claimant's broken finger did not cause long-term impairment with respect to performance of job duties; claimant did not submit any evidence demonstrating that broken finger caused any limitations after date of full duty release from physician; claimant thus failed to meet burden to demonstrate broken finger constituted permanent or long-term impairment that substantially

12

limited performance of major life activity) (citing TEX. LAB. CODE § 21.002(6); *El Paso Cnty. v. Vasquez*, 508 S.W.3d 626, 639 (Tex. App.—El Paso 2016, pet. denied)).

We overrule Johnson's first issue.

## Disability-Based Harassment

In his second issue, Johnson argues that the trial court erred in granting summary judgment as to his disability-based harassment claim. Capstone responds that Johnson failed to present evidence that the complained-of conduct was sufficiently severe or pervasive to affect a term, condition, or privilege of employment.

To succeed on a claim for disability-based harassment, otherwise referred to as hostile work environment claim,[4] Johnson needed to demonstrate that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the complained-of harassment was based on his disability; (4) the harassment at issue affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial

---

[4] These terms are often used interchangeably. *See Equal Emp. Opportunity Comm'n v. U.S. Drug Mart, Inc.*, No. 23-50075, 2024 WL 64766, at *1 n.1 (5th Cir. Jan. 5, 2024) (per curiam) (not designated for publication); *see also LeBlanc v. Lamar State Coll.*, 232 S.W.3d 294, 303 & n.7 (Tex. App.—Beaumont 2007, no pet.) (recognizing "disability-based harassment" claim under TCHRA).

13

action. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003); *LeBlanc*, 232 S.W.3d at 303.

As discussed above, we have already determined that Johnson does not have a disability within the meaning of the TCHRA. Thus, he cannot satisfy the first element of a disability-based harassment or hostile work environment claim—membership in a protected group. *See Gowesky*, 321 F.3d at 509; *LeBlanc*, 232 S.W.3d at 303.

We overrule Johnson's second issue.

## Retaliation

In his third issue, Johnson contends that the trial court erred in rendering summary judgment in favor of Capstone as to his retaliation claim. Capstone responds that the trial court properly granted summary judgment on the retaliation claim because Johnson is not disabled, and thus he cannot establish the requisite causal connection between his protected activity and the adverse employment action.

### 1. Applicable Law

The TCHRA prohibits an employer from retaliating against its employee for engaging in certain protected activities. TEX. LAB. CODE § 21.055. Examples of such activities include: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding or hearing. *Id*. In his response to Capstone's

summary judgment motion, Johnson points to the following protected activities: (1) requesting time off to treat his disability, and (2) complaining about how he was treated when he requested time off and when he returned.[5]

To establish a prima facie claim of retaliation, a plaintiff must establish that: (1) he participated in protected activity, (2) his employer took an adverse employment action against him, and (3) a causal connection existed between his protected activity and the adverse employment action. *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Donaldson*, 495 S.W.3d at 441. If the employee establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory purpose for the adverse employment action. *Chandler*, 376 S.W.3d at 822–23; *Hernandez v. Grey Wolf Drilling, L.P.*, 350 S.W.3d 281, 286 (Tex. App.—San Antonio 2011, no pet.).

### 2. Analysis

Concerning the protected activity requirement, the Texas Supreme Court has held that the employee's complaints must at least "alert the employer to the employee's reasonable belief that unlawful discrimination is at issue." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 786 (Tex. 2018). Though "magic

---

[5] Johnson's lawsuit originally alleged that Capstone retaliated against him by terminating him following his request for reasonable accommodation, for taking medically necessary FMLA leave, and for reporting discrimination and harassment.

15

words" are not required to invoke the TCHRA's anti-retaliation provision, complaining only of "harassment," "hostile environment," "discrimination," or "bullying" is insufficient. *Id.* at 786–87. There must be some indication of discrimination on the basis of the protected class. *See id.* at 787 (concluding that plaintiff's description of coworker's behavior as "inappropriate," "offensive," "bullying," "harassment," "embarrassing," "rude," and "intimidating" did not alert employer that plaintiff thought coworker's behavior was based on gender or otherwise amounted to sex-based discrimination). "A vague charge of discrimination will not invoke protection under the statute." *Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 65 (Tex. App.—Houston [14th Dist.] 1998, no pet.), *overruled in part on other grounds by Glassman v. Goodfriend*, 347 S.W.3d 772 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

First, as to Johnson's allegation that his request for time off to treat his high blood pressure is protected activity, even if such a request could constitute protected activity under the TCHRA,[6] nothing about his requests indicates a concern about

---

[6] Section 21.055 of the TCHRA identifies the following as protected activities: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. TEX. LAB. CODE § 21.055. In *Texas Department of Transportation v. Lara*, the Texas Supreme Court rejected the lower's courts determination that a request for accommodation could not constitute protected activity under section 21.055 as a matter of law but held that the request must nevertheless "have alerted TxDOT to Lara's belief that disability discrimination was at issue." 625 S.W.3d 46, 60 (Tex. 2021).

disability-based harassment or discrimination. Johnson merely advised Javorsky of his condition or symptoms and his inability to work as a result. For example, on June 14, 2018, Johnson sent a text message to Javorsky stating: "Jeff still not feeling good on medicine[.] feeling worse[.] double[d] up on my pills and now can't get out of bed without help to go to the bathroom to throw up[.] room spinning[.] might have to go in to ER if symptoms continue[.]" This type of request, standing alone, does not give Capstone the requisite notice of possible disability discrimination or harassment. *See Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 60 (Tex. 2021) (considering whether plaintiff's request for disability accommodation constituted protected activity and concluding that where evidence only showed plaintiff was "constantly calling" his superiors, timely filed FMLA and sick-leave paperwork, and discussed possibility of leave without pay in telephone conversation with superiors, plaintiff failed to satisfy protected activity element).

We next consider whether Johnson's June 15, 2018 statement to HR provided sufficient notice of discrimination to Capstone such that it constituted protected activity. We conclude that it does not. Though Johnson's statement describes the blood pressure comment from Polone, the discussions with Javorsky, and the incident with Malveaux, nothing about these complaints suggests that Johnson intended to report discrimination or harassment *based on his disability*. As noted above, even in documenting the most serious event—the confrontation with

17

Malveaux—Johnson does not specify anything Malveaux allegedly said to Johnson, only that Malveaux was "yelling," "cursing," and "shouting." Again, complaining of workplace conduct as "inappropriate," "offensive," "bullying," "harassment," "embarrassing," "rude," or "intimidating" without more does not alert an employer that the plaintiff seeks to report actionable discrimination. *Alamo Heights*, 544 S.W.3d at 786–87; *see also Sykes v. Driftwood Hosp. Mgmt., LLC*, No. 01-18-00552-CV, 2019 WL 1246337, at *6 (Tex. App.—Houston [1st Dist.] Mar. 19, 2019, no pet.) (mem. op.) (holding that plaintiff's two complaints about harassing behavior did not constitute protected activity where complaints did not alert employer to concerns of race or age discrimination; plaintiff testified that coworker "*never* even harassed him about his race or age" but harassed him by questioning his qualifications and ability to perform job); *Guajardo v. Univ. of Tex. Med. Branch at Galveston*, No. 01-17-00288-CV, 2018 WL 2049334, at *8–9 (Tex. App.—Houston [1st Dist.] May 3, 2018, no pet.) (mem. op.) (holding that employee's comments in evaluation and internal grievance letter did not constitute protected activity where complaints used words like "discriminated," "retaliated," and "singled out" but did not identify alleged discriminatory conduct at issue).

Because neither Johnson's requests for leave nor his statement to HR contain a sufficient description to alert Capstone to any disability-based harassment or discrimination, we determine that he has failed to demonstrate a protected activity

18

under the TCHRA. *See Alamo Heights*, 544 S.W.3d at 786–87; *Sykes*, 2019 WL 1246337, at *6. Johnson therefore cannot establish a prima facie case of retaliation.[7] *See Chandler*, 376 S.W.3d at 822.

We overrule his third issue.

## Conclusion

We affirm the trial court's grant of Capstone's summary judgment.


Amparo Monique Guerra
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.

---

[7] Because we have concluded that Johnson failed to establish a prima facie case of either disability discrimination or retaliation, we do not reach his arguments concerning pretext. *See Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 437 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (explaining burden-shifting analysis in disability discrimination claim); *Brewer v. Coll. of the Mainland*, 441 S.W.3d 723, 729–30 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (explaining same for retaliation claims).