**Opinion issued April 18, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00247-CV

———————————

## RONALD SMITH, Appellant

## V.

## HARRIS COUNTY, Appellee

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Case No. 2016-49448**

---

## MEMORANDUM OPINION

Appellant, Ronald Smith, challenges the trial court's rendition of summary

judgment in favor of appellee, Harris County, in his suit against it for retaliation

under the Texas Commission on Human Rights Act ("TCHRA").[1]  In his sole issue, Smith contends that the trial court erred in granting Harris County summary judgment.

We affirm.

## Background

In his petition, Smith alleged that on April 15, 1996, he began working for Harris County as a Juvenile Probation Officer for the Harris County Juvenile Probation Department ("HCJPD").  On April 7, 2008, he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  On April 2, 2012, he filed a second charge of discrimination with the EEOC.

In June 2015, Smith "applied for a promotion to the position of Intake [Screening] Supervisor" for the HCJPD, but, according to Smith, Harris County "gave the promotion to a lesser qualified employee by the name of Doris Cisneros."  Smith alleged that Harris County denied him the promotion because he had previously filed EEOC charges in 2008 and 2012.  Smith brought a claim against Harris County for retaliation under the TCHRA.[2]

Harris County answered, generally denying Smith's allegations and asserting additional defenses.  Harris County then filed a combined no-evidence and

---

[1]     *See* TEX. LAB. CODE ANN. § 21.055.

[2]     *See id.*

matter-of-law summary-judgment motion, asserting that to establish a prima facie case of retaliation, Smith was required to show: (1) he had engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal link existed between Smith's protected activity and the adverse employment action. It further asserted that no evidence established a causal link between Smith's protected activity, i.e., the filing of his EEOC charges in 2008 and 2012, and the adverse employment action, i.e., Harris County's June 2015 denial of a promotion for the position of Intake Screening Supervisor. Harris County argued that Smith's retaliation claim also failed because it had "a legitimate[,] non-discriminatory reason for not promoting" Smith to the position of Intake Screening Supervisor and no evidence established that Harris County's articulated reason was merely pretextual.

Harris County attached to its summary-judgment motion the affidavit of Tim Broussard, the former Deputy Director of Intake and Court Services Division for the HCJPD; the affidavit of Alice Charlene Laskoskie, the former Intake Administrator for the Intake and Court Services Division for the HCJPD and the current Assistant Deputy Director for the Intake and Court Services Division; the affidavit of Steve Willing, the former Assistant Deputy Director of the Intake and Court Services Division for the HCJPD and the current Deputy Director of Intake and Court Services Division; the affidavit of Bianca Malveaux, an Assistant Deputy Director of Administrative Services ("HR") for the HCJPD; the job posting for the Intake

Screening Supervisor position; a document titled "Procedure [f]or Hiring" related to the position of Intake Screening Supervisor; the job description for the Intake Screening Supervisor position; an email from Broussard related to Smith's removal from "the designation of Lead Officer"; notes taken by Laskoskie, Willing, and Malveaux during their interviews of the applicants for the Intake Screening Supervisor position; Smith's deposition testimony; and Smith's 2008 and 2012 EEOC charges.

In his response to Harris County's summary-judgment motion, Smith asserted that he began working for Harris County as a Juvenile Probation Officer for the HCJPD in 1996 and he has worked in the intake unit, the field unit, and the court unit. While working in the intake unit, Smith's job "included the pre-booking/intake/detainment/detention hearing report and . . . release process of juveniles admitted into the Harris County Juvenile Justice Center detention." Smith also interviewed families and juveniles, collected paperwork from hospitals and schools, and created "summar[ies]" for judges. According to Smith, he was never disciplined at work and he took "the time to professionally develop younger employees in the absences of supervisors."

Smith further asserted in his response that, from 2006 to 2007, he served as a "Lead Officer/Senior Officer" for the Intake and Court Services Division for the HCJPD. According to Smith, "[a] Lead Officer does basically everything that a

4

supervisor does except there is no increase in pay." While serving as a Lead Officer, Smith oversaw fifteen other officers. Smith was removed from his role as a Lead Officer after a year because another Lead Officer "return[ed] from military leave."

In 2008, Smith filed an EEOC charge against Harris County for sex and race discrimination stemming from treatment that he had received from his supervisor, Patricia Sanders. At the time of Smith's 2008 EEOC charge, Laskoskie was Sanders's manager and Broussard was Laskoskie's manager. According to Smith, Laskoskie was ultimately "the decision maker who decided not to promote Smith" in 2015. In 2012, Smith filed a second EEOC charge "because he was not promoted to two positions he was qualified for in November 2011 and March 2012 in retaliation for [the] filing of his 2008 EEOC charge."

According to Smith, in June 2015, a three-person screening committee consisting of Laskoskie, Willing, and Malveaux interviewed eleven applicants for the position of Intake Screening Supervisor. Each applicant was asked the same six questions in his or her interview. Ultimately, Cisneros was hired for the position of Intake Screening Supervisor, although Smith asserted that she was "significantly less qualified" than him. Smith explained that Cisneros "worked very closely with Laskoskie," and Laskoskie and Malveaux, who were both members of the screening committee, "were aware of Smith's 2012 and 2008 EEOC charges."

Moreover, Smith asserted in his summary-judgment response that Cisneros was subsequently removed from her position as Intake Screening Supervisor and "abruptly switched . . . into a different position away from the Intake line staff." While Cisneros served as Intake Screening Supervisor, she, according to Smith, falsely accused him "of closing certain deferred prosecution cases without Intake [M]anagement's permission."

Smith argued that circumstantial evidence showed a causal link between his filing of his 2008 and 2012 EEOC charges and Harris County's June 2015 denial of his promotion to the position of Intake Screening Supervisor because Harris County "failed to follow its . . . hiring policy when it failed to promote" him; Laskoskie, a member of the screening committee, had a personal relationship with Cisneros, who was eventually hired for the position of Intake Screening Supervisor; Laskoskie and Malveaux, members of the screening committee who interviewed the applicants for the promotion, knew of Smith's previous EEOC charges as did Broussard, "who had the final say on the [I]ntake [Screening] [S]upervisor promotion"; Cisneros was "significantly less qualified than Smith" for the position of Intake Screening Supervisor; and "[t]emporal proximity exist[ed] between the conduct complained of" and Smith's EEOC charges. Smith further asserted that "Harris County's non-discriminatory reason for not choosing [him] for [the] promotion to [Intake Screening] [S]upervisor in June 2015 [was] pretextual."

6

Smith attached to his summary-judgment response his resume; his deposition testimony; his affidavit; Broussard's 2014 deposition testimony purportedly from a 2012 lawsuit between the parties; the job description for a Juvenile Probation Officer in the Intake and Court Services Division of the HCJPD; his 2008 and 2012 EEOC charges; notes taken by Laskoskie, Willing, and Malveaux during their interviews of the applicants for the Intake Screening Supervisor position; his original petition from his 2012 lawsuit between the parties and a March 24, 2014 "Order Granting Plaintiff's Notice of Dismissal Without Prejudice" related to that lawsuit; the job posting for the Intake Screening Supervisor position; an email regarding Smith's "new responsibilities as [a] Lead Officer on weekends"; and Broussard's "Harris County Grievance Form 200 Supervisor Response."

In its reply to Smith's response, Harris County asserted that Smith failed to bring forth "any circumstantial evidence to establish the requisite causal connection or retaliatory animus." More specifically, Harris County asserted that it followed its policies and procedures for promoting an individual to the position of Intake Screening Supervisor, "[t]here was no discriminatory treatment toward[] [Smith] in relation to others that applied for the" Intake Screening Supervisor position, any knowledge by the screening committee members of Smith's previous EEOC charges, standing alone, was not sufficient to demonstrate a causal connection, there was no evidence "that the reason . . . Cisneros was promoted over [Smith] was

7

false," and "[t]oo long of a temporal proximity exist[ed] between the conduct complained [of] and [Smith's EEOC] charge[s] of discrimination."

The trial court, without specifying the ground, granted Harris County summary judgment on Smith's retaliation claim.

**Standard of Review**

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request for summary judgment as a matter of law. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). When a party has sought summary judgment on both grounds and the trial court's order does not specify its reasons for granting summary judgment, we first review the propriety of the summary judgment under the no-evidence standard. *See Ford*

8

*Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(i). If we conclude that the trial court did not err in granting summary judgment under the no-evidence standard, we need not reach the issue of whether the trial court erred in granting summary judgment as a matter of law. *See Ford Motor Co.*, 135 S.W.3d at 600.

To prevail on a no-evidence summary-judgment motion, the movant must establish that there is no evidence to support an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the non-movant to present evidence raising a genuine issue of material fact as to each of the elements challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524. A no-evidence summary-judgment may not be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *See Ford Motor Co.*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (internal quotations omitted).

9

To prevail on a matter-of-law summary-judgment motion, the movant must establish that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When a defendant moves for a matter-of-law summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *See Siegler*, 899 S.W.2d at 197; *Transcon. Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 691 (Tex. App.— Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded fact finders could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## Summary Judgment

In his sole issue, Smith argues that the trial court erred in granting Harris County summary judgment on his retaliation claim because he established a causal link between his protected activity and the adverse employment action and "Harris

10

County's non-discriminatory reason for not choosing [him] for [the] promotion to [Intake Screening] [S]upervisor in June 2015 [was] pretextual."

The TCHRA prohibits an employer from retaliating against an employee for engaging in certain protected activities. *See* TEX. LAB. CODE ANN. § 21.055; *see also Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 822 (Tex. App.— Houston [1st Dist.] 2012, pet. denied). Because one of the purposes of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964," when analyzing a retaliation claim brought under the TCHRA, we look not only to state cases but also to analogous federal statutes and the cases interpreting those statutes. *See* TEX. LAB. CODE ANN. § 21.001(1); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012).

To prevail on a retaliation claim under the TCHRA, an employee must establish a prima facie case by showing: (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action. *Chandler*, 376 S.W.3d at 822. Protected activities include: (1) opposing a discriminatory practice, (2) making or filing a charge, (3) filing a complaint, or (4) testifying, assisting, or participating in any manner in an investigation, proceeding or hearing. *See* TEX. LAB. CODE ANN. § 21.055; *Datar v. Nat'l Oilwell Varco, L.P.*, 518 S.W.3d 467, 477 (Tex. App.— Houston [1st Dist.] 2017, pet. denied). Here, it is undisputed that Smith engaged in

a protected activity by filing his 2008 and 2012 EEOC charges and an adverse employment action occurred, i.e., Harris County's June 2015 denial of a promotion to Smith for the position of Intake Screening Supervisor. *See Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 364 (5th Cir. 2013) ("Failure to promote is clearly an adverse employment action."); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 786 (Tex. 2018) ("An employee engages in a protected activity by . . . making a charge of discrimination with the EEOC.").

Harris County moved for summary judgment, arguing, in part, that no evidence established a causal link between Smith's protected activity, i.e., the filing of his EEOC charges in 2008 and 2012, and the adverse employment action, i.e., the June 2015 denial of a promotion to Smith for the position of Intake Screening Supervisor.

An employee asserting a TCHRA retaliation claim must establish that, in the absence of his protected activity, his employer's prohibited conduct would not have occurred when it did. *Chandler*, 376 S.W.3d at 823; *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 377 (Tex. App.—Fort Worth 2006, no pet.). Thus, an employee must establish a "but for" causal nexus between the protected activity and the prohibited conduct. *Chandler*, 376 S.W.3d at 823 (internal quotations omitted); *Herbert*, 189 S.W.3d at 377 (internal quotations omitted). However, an employee is

12

not required to establish that the protected activity was the sole cause of the employer's prohibited conduct. *Chandler*, 376 S.W.3d at 823; *Herbert*, 189 S.W.3d at 377.

A retaliation plaintiff generally may rely on circumstantial evidence to establish a causal link between the protected activity and the retaliatory action. *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015); *see Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 389 (Tex. 2005). Circumstantial evidence sufficient to show a causal link between an adverse employment decision and an employee's protected activity may include: (1) the employer's failure to follow its usual policies and procedures in carrying out the challenged employment actions; (2) discriminatory treatment in comparison to similarly situated employees; (3) evidence that the stated reason for the adverse employment decision was false; (4) the temporal proximity between the employee's conduct and the challenged conduct; and (5) knowledge of an employee's discrimination charge or suit by those making the adverse employment decision. *Datar*, 518 S.W.3d at 478; *see also Alamo Heights*, 544 S.W.3d at 790. "[A]n employee's subjective beliefs of retaliation are merely conclusions and do not raise a fact issue precluding summary judgment" in a retaliation claim. *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 731 (Tex. App.—Fort Worth 2006, no pet.) (citing *Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994)).

13

## A.  Policies and Procedures

In his summary-judgment response, Smith argued that Harris County failed to "follow company polic[ies] and procedures" when hiring for the Intake Screening Supervisor position because Thomas Brooks, the purported Chief Juvenile Probation Officer/Executive Director in 2015, was required to make the June 2015 hiring decision for the Intake Screening Supervisor position.  In support of his argument, Smith relies solely on the job description for the Intake Screening Supervisor position, which states:  "The Chief Juvenile Probation Officer/Executive Director shall hire the employees of the Probation Department."

Broussard, in his affidavit, testified that in 2015, he was the Deputy Director of Intake and Court Services Division for the HCJPD, and as deputy director, he was responsible for the Intake Screening and Court Services Units.  In June 2015, he posted a notice for an open Intake Screening Supervisor position.  According to Broussard, in general, "[t]he selection process for choosing the best qualified application for that position beg[an] with a screening committee," who "first conduct[ed] interviews [with] all of the qualified applicants."  Because the screening committee and/or HR pre-screen[ed] all applicants, "only those who me[t] the minimum requirements" for the position were interviewed.  Once the screening committee completed its interviews of the applicants, it prepared a list of the most

14

qualified applicants for Broussard to consider. According to Broussard, "[t]his practice [was] reflected in the HCJPD's policies and procedures for the office."

Broussard further explained that because, in the instant case, the position to be filled was a supervisor position, the screening committee consisted of two higher level employees from the Intake Screening Unit along with an HR representative who chaired the committee. Here, the screening committee included Laskoskie, who at the time was the Intake Administrator for the Intake and Court Services Division, and Willing, who at the time was the Assistant Deputy Director of the Intake and Court Services Division. Broussard, as Deputy Director of Intake and Court Services Division, was "authorized to make the final decision to select the best [applicant] for the position."

According to Broussard, in June 2015, he met with the screening committee and received the names of the two applicants that the committee had selected as the most qualified: Cisneros and Laura Gallardo. Smith was not included in the screening committee's list of most-qualified applicants. Broussard discussed the merits of each applicant with the members of the screening committee, and because Laskoskie would ultimately be the manager over the individual selected for the Intake Screening Supervisor position, he asked her opinion as to "the more preferable" applicant. Laskoskie "advised [that] she would prefer" Cisneros for the position, and the other members of the screening committee agreed with Laskoskie's

recommendation. Broussard approved Cisneros for the Intake Screening Supervisor position.

In addition to Broussard's affidavit testimony, the record also contains Broussard's 2014 deposition testimony that was purportedly taken in the course of Smith's 2012 lawsuit involving the same parties. There, Broussard testified that he had previously served as an Intake Screening Supervisor in the Intake and Court Services Division of the HCJPD from 2000 until 2007, when he was then appointed to be the Administrator of Intake Screening for the Intake and Court Services Division. In August 2009, he was appointed as Deputy Director of Intake and Court Services Division. At the time that Broussard was deposed in 2014, Brooks served as the Chief Juvenile Probation Officer or Executive Director.

In regard to his previous position as Intake Screening Supervisor for the Intake and Court Services Division, Broussard explained that he had applied for that position and then interviewed with a screening committee. According to Broussard, the screening committee then listed him as one of its final applicants, and the Deputy Director of Intake and Court Services at the time decided to promote Broussard to the position of Intake Screening Supervisor.

Broussard also generally explained, in regard to the interview and promotion process for supervisor positions, as follows:

> [The] promotion process is that a position gets posted. There is a screening done by a screening committee. Based on the number of

16

applicants for the position, the [screening] committee identifies either three or four of the more promising [applicants]. That list is brought to [myself]. . . . My style is to speak then with the administrator who will be managing the supervisor and see if they have any clear preference.

As explained by Broussard, the opinion of the "administrator" was important to him because the administrator "w[ould] be directly in line to manage the supervisor" that was ultimately hired by Broussard. According to Broussard, a screening committee includes "[t]he administrator of the unit" for which the supervisor position has been posted as well as Broussard's Assistant Deputy Director at the time.

Further, during his 2014 deposition, Broussard was asked to review the "Harris County Juvenile Human Resources Operating Procedure," and specifically the section titled, "Hiring and Promotion Policy," after which, the following exchange occurred:

| [Smith's attorney:] | Would you go to the second page, please sir? Do you see where it says, "Upper Mobility Positions"? |
|---|---|
| [Broussard:] | Yes, ma'am, I do. |
| [Smith's attorney:] | And if we are talking about moving from a [J]uvenile [P]robation [O]fficer to a supervisor, is that an upper mobility position? |
| [Broussard:] | Yes, ma'am, it is. |
| [Smith's attorney:] | . . . [L]et's go to the third paragraph below that. It says, "The names of the most promising applicants will be submitted to the deputy director with the open position." |

17

|  | Now, in 2011, were you the deputy director? |
| . . . . | |
| [Broussard:] | Yes, ma'am I was. |
| [Smith's attorney:] | In 2012, were you the deputy director? |
| [Broussard:] | Yes, ma'am, I was. |
| [Smith's attorney:] | And it says, "If there are ten applicants or less, up to three names will be submitted. *The deputy director with the opening will choose the best qualified applicant based on the needs of the division and all relevant information regarding the applicants.*" |
|  | Is that right? |
| [Broussard:] | *Yes, ma'am.* |
| [Smith's attorney:] | *And is that how in 2011 and 2012 you chose who to fill the supervisor[] positions?* |
| [Broussard:] | *Yes, ma'am it is.* |
| [Smith's attorney:] | I believe you said . . . that you would consult or confer with the administrator of that department is that right? |
| [Broussard:] | That's part of the needs of the division in my mind. |
| [Smith's attorney:] | . . . And . . . it was . . . Laskoskie, is that right? 2011 and 2012? |
| [Broussard:] | That is correct. |

(Emphasis added) (Internal quotations omitted.)

Broussard further confirmed in his deposition that he utilized these standard hiring procedures in 2011 and 2012 when two other Intake Screening Supervisor positions were posted. For instance, in regard to the 2011 Intake Screening Supervisor position, Broussard testified that "[a]t the end of the screening [interviews], [a] list was brought to [him]," which included "the names of the employees" that the screening committee thought were the "most appropriate for the position." That screening committee consisted of Laskoskie, the Intake Administrator for the Intake and Court Services Division at the time, Terri McGee, Broussard's Assistant Deputy Director at the time, and Bianca Malvo, an Assistant Deputy for HR. Broussard then met with Laskoskie "and one of the HR people who brought the list." Broussard looked at the names on the list and "briefly reviewed the documents that were there, which would [have] be[en] the questions that were asked of the applicants and their responses to the questions; and the screening committee['s] . . . observations about the[] responses." Broussard then asked Laskoskie, as the administrator, "who she was most comfortable with of the applications that were selected." In 2011, Laskoskie recommended Nicole Tillis, who Broussard knew as a Lead Officer. Broussard selected Tillis for the supervisor position because he agreed with Laskoskie's recommendation.

In regard to the 2012 Intake Screening Supervisor position, Broussard explained that the screening committee then consisted of Laskoskie, the Intake

19

Administrator for the Intake and Court Services Division at the time, McGee, Broussard's Assistant Deputy Director at the time, and Michael Prince, an HR representative. Broussard again sought the recommendation of Laskoskie as to "who she was most comfortable with of the selected applicants," but it was Broussard who made the ultimate decision to select Vincent Burton for the 2012 Intake Screening Supervisor position.

In her affidavit, Laskoskie testified that from July 1, 2011 to November 2015, she served as the Intake Administrator for the Intake and Court Services Division for the HCJPD. In June 2015, she served on a screening committee "for the purpose of interviewing qualified [applicants] for the position that was posted . . . for Intake Screening Supervisor." Broussard, as the Deputy Director of the Intake and Court Services Division, selected her and Willing, who was Assistant Deputy Director of the Intake and Court Services Division for the HCJPD at the time. The third screening committee member was an HR representative. Smith interviewed for the Intake Screening Supervisor position as did ten other applicants. After the eleven applicants were interviewed, the members of the screening committee discussed "all of the [applicants] and came to an agreement of the two people that would be [the] top picks," Cisneros and Gallardo. The screening committee then gave their recommendations to Broussard. After discussion and reviewing feedback from the

20

screening committee, Broussard selected Cisneros for the position. We note that Willing's affidavit testimony largely mirrors that of Laskoskie.

Similarly, Malveaux testified, in her affidavit, that since 2011, she has served as an Assistant Deputy Director of HR, and has frequently served on screening committees as the HR representative. HR initially prescreens the applicants for an available position to make sure that they meet the minimum requirements for the position prior to any interviews. HR then consolidates the relevant documentation for each applicant into packets for the screening committee to use during interviews. As HR representative, Malveaux chairs the interviews "by making introductions and monitoring the process to insure compliance with HR policy."

In June 2015, Malveaux served as the chair of the screening committee that also consisted of Laskoskie and Willing. Smith as well as ten other applicants were interviewed for the position of Intake Screening Supervisor. After the interviews, Malveaux "asked the other two panel members who were their top picks keeping in mind that they need[ed] to choose the person who they fe[lt] most strongly w[ould] be able to perform the duties and functions of th[e] position." The screening committee unanimously elected Cisneros and Gallardo as "th[e] top picks." The committee then took its recommendations to Broussard, who "made the final selection."

21

Moreover, Smith, in his own deposition, testified, in regard to the hiring process for a supervisor position, that initially a position is posted, and when an individual applies for the position, he sends his resume or application to HR who then schedules an interview for an applicant. From there, applicants are interviewed and "then they decide who they want to put in that position." In the past when Smith had applied for other supervisor positions, he was interviewed by "a panel of three people." These three people always included an HR representative and an administrator. Smith also recalled that Broussard's Assistant Deputy Director was a member of the panel in the past. According to Smith, the members of the panel "write down all the notes and . . . pass them forward to whoever the deputy or the actual chief juvenile probation officer [was]." Smith opined that it "seem[ed] logical" that the three-person panel would "narrow down the pool to a certain number of applicants." While Smith supposed that the ultimate hiring decision was made by the Chief Juvenile Probation Officer or Executive Director, he also testified: "I don't think that they make the decision themselves. *It may even be the deputy director that makes that decision.*" (Emphasis added.)

In his summary-judgment response, Smith relied on his own affidavit testimony and his deposition testimony to support his assertion that Harris County "failed to follow its own hiring policy" when it hired Cisneros for the position of Intake Screening Supervisor. But, to constitute competent evidence to oppose a

22

summary judgment, an affidavit must do more than make conclusory, self-serving statements that lack factual detail. *See C.I.A. Hidden Forest, Inc. v. Watson*, No. 09-17-00117-CV, 2018 WL 1527626, at *4 (Tex. App.—Beaumont Mar. 29, 2018, no pet.) (mem. op.); *Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex. App.— Texarkana 2000, no pet.); *see also Nguyen v. Citibank N.A.*, 403 S.W.3d 927, 931 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (affidavits containing conclusory statements that fail to provide underlying facts to support their conclusions are not proper summary-judgment evidence); *Pipkin v. Kroger Tex. L.P.*, 383 S.W.3d 655, 670 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("Conclusory affidavits are not sufficient to raise fact issues because they are not credible or susceptible to being readily controverted." ). Here, Smith in his affidavit merely stated:

> The Job Posting and Job Description for that position each noted the following: "Chief Juvenile Probation Officer/Executive Director shall hire the employees of the Probation Department." . . . Chief JPO/Executive Director Thomas Brooks, not Mr. Broussard, was supposed to be the person who made the final decision about the new Intake [Screening] Supervisor. The agency may not have followed its own hiring rules.

Smith has presented no evidence that Harris County failed to follow its policies and procedures when hiring for the Intake Screening Supervisor position in June 2015.

23

**B.    Discriminatory Treatment Compared to Those Similarly Situated**

Smith further argued in his summary-judgment response that he was "discriminated against in relation to other[] [employees] that applied for the position" of Intake Screening Supervisor because "the cards were stacked against" him.  More specifically, Smith argued that he was not treated similarly to Cisneros because he "did not have the same kind of working relationship with the decision makers that Cisneros did," "Harris County failed to give [him] the benefit of having his manager on the [screening] committee," Laskoskie, a member of the screening committee, had a personal relationship with Cisneros, and Broussard, "who[] had the final say with regard to who would be awarded" the Intake Screening Supervisor Position, "removed Smith from his post as [a] Lead Officer . . . in 2008."

Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct.  *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 584 (Tex. 2017); *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005); *Metro. Transit Auth. of Harris Cty. v. Ridley*, 540 S.W.3d 91, 107 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). "This requires [a] plaintiff to show not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also . . . that there were no differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them." *Ineichen v. Ameritech*, 410 F.3d

956, 960–61 (7th Cir. 2005) (second alteration in original) (internal quotations omitted). Notably, "[t]he situations and conduct of the employees in question must be nearly identical." *Rincones*, 520 S.W.3d at 584 (internal quotations omitted); *see also AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008). "Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be nearly identical." *Reyes*, 272 S.W.3d at 594 (internal quotations omitted).

The record here indicates that the screening committee interviewed eleven applicants, including Smith, for the position of Intake Screening Supervisor. These eleven applicants were asked the same six questions during their interviews, and the screening committee took notes on each applicant's responses. Following the interviews, the screening committee discussed "all the [applicants] encompassing their interview, their performance in their respective departments, their resumes, their work experience, and education." After that discussion, the screening committee agreed on their "top picks" for the Intake Screening Supervisor position, which were Cisneros and Gallardo. The screening committee then presented their recommendations to Broussard, who ultimately selected Cisneros for the Intake Screening Supervisor position.

In his summary-judgment response, Smith did not address any of the other employees, other than Cisneros, who applied for the position of Intake Screening

25

Supervisor, and he did not argue that any of the other applicants for the position were similarly situated to him. Instead, Smith presumed that he and Cisneros were similarly-situated employees and then asserted that they were treated differently. Contrary to Smith's belief, however, he and Cisneros were not similarly situated.

In his affidavit, Willing, testified in regard to Cisneros, that in June 2015, when she interviewed for the position of Intake Screening Supervisor, she, in addition to being a Juvenile Probation Officer, had been "serving as one of the [L]ead [O]fficers in Intake for a few years and [had] gained the trust and respect of her fellow officers as well as management." Cisneros was "reliable, hard-working, took the initiative to get things done, and always went above and beyond her normal duties." For instance, in addition to her normal responsibilities as a Lead Officer in the Intake and Court Services Division, Cisneros "assisted in the detention hearing courtroom as well as filled in for th[e] role as detention hearing representative as needed, which [was] a supervisor position."

Laskoskie, in her affidavit, similarly testified that Cisneros, at the time she interviewed for the Intake Screening Supervisor Position in June 2015, had been a Lead Officer in the Intake and Court Services Division for the past four years and had "stepped in as an acting supervisor" at times, such as by "filling in during the absence[s] of [s]upervisors." For instance, while one supervisor was "out on military

leave from December 2012 to May 2014," Cisneros "made herself available to work any shift, weekdays, weekends in the role as acting supervisor."

In contrast to Cisneros, Smith, when he interviewed for the position of Intake Screening Supervisor in June 2015, was not a Lead Officer in the Intake and Court Services Division. Although the record reveals that Smith did serve as a Lead Officer for a period of time from 2006 to 2007, Broussard testified, in his affidavit, that he removed Smith from the position of Lead Officer in 2007 "after an employee complained about extremely uneven distribution of . . . work." Broussard further testified, in his 2014 deposition, that Smith served as a Lead Officer in the Intake and Court Services Division for less than a year. According to Broussard, Smith was promoted to a Lead Officer in the Intake and Court Services Division in late 2006 and he was removed from that position in April 2007.

Employees who hold different jobs are not similarly situated. *Rincones*, 520 S.W.3d at 584; *Esparza v. Univ. of Tex. at El Paso*, 471 S.W.3d 903, 911–12 (Tex. App.—El Paso 2015, no pet.). And employees with different responsibilities are not considered to be "nearly identical." *Rincones*, 520 S.W.3d at 584 (internal quotations omitted); *Reyes*, 272 S.W.3d at 594 (internal quotations omitted).

Here, Smith, himself, testified in his deposition that a Juvenile Probation Officer and a Lead Officer have different roles and different responsibilities. For instance, Smith explained that as a Juvenile Probation Officer, he "inventoried

27

property," "did the booking process for the juveniles coming in," "did summary reports for the judges, for detention hearing[s] as well," "met with families," "interviewed the children as well as their parents," and "requested documents from schools, different places, medical offices, [and] . . . psychiatric hospitals." In contrast, a Lead Officer had the "same duties" as a Juvenile Probation Officer, but also "the added duties of a manager." Thus, a Lead Officer was required to "do everything that a supervisor would do," including "sign[ing] off on reports," reviewing reports, "insur[ing] that work was flowing as it . . . should," "assign[ing] cases to the different officers in the unit to work on," and making sure that other officers were "turning in their work." Further, if an individual "called in . . . sick or wasn't coming to work for whatever reason," the Lead Officer would note that and "pass that along to the managers."

We note that the record also contains a job description for a Juvenile Probation Officer in the Intake and Court Services Division and a job description for an Intake Screening Supervisor in that same division. The Juvenile Probation Officer's job description states: "The Intake officer facilitates the pre-booking/intake/ detainment/detention hearing report and or release process of juveniles admitted to the Harris County Juvenile Justice Center detention." The job description then lists the "[e]ssential [f]unctions" of a Juvenile Probation Officer. In contrast, the job description for an Intake Screening Supervisor states that the supervisor

28

"[c]oordinates the efforts of intake personnel to ensure a comprehensive service delivery at the Intake Screening level" and lists the "[e]ssential [f]unctions" of an Intake Screening Supervisor, which differ from those of a Juvenile Probation Officer. The difference in the tasks and responsibilities assigned to a Juvenile Probation Officer in the Intake and Court Services Division versus the tasks and responsibilities assigned to an Intake Screening Supervisor for the same division is relevant considering that Smith testified that a Lead Officer performs the *same* tasks, and has the same responsibilities, as an Intake Screening Supervisor, in addition to the responsibilities of a regular Juvenile Probation Officer.

When two employees have differing supervisory responsibilities, we cannot say that they are similarly situated; instead, such circumstances indicate that such employees are in "significantly different position[s]." *See Grice v. Alamo Cmty. Coll. Dist.*, No. 04-12-00524-CV, 2013 WL 1760626, at *5 (Tex. App.—San Antonio Apr. 24, 2013, no pet.) (mem. op.); *see also Crosby v. Comput. Sci. Corp.*, 470 Fed. Appx. 307, 309 (5th Cir. 2012) (supervisor not similarly situated).

Smith has presented no evidence of any discriminatory treatment in comparison to any similarly-situated employee.

## C.    Stated Reason for Adverse Employment Decision

In his summary-judgment response, Smith next argues that Harris County's stated reason for promoting Cisneros to the position of Intake Screening Supervisor

was false because she was significantly less qualified than him and he is significantly more qualified for the position.

Laskoskie testified, in her affidavit, that after interviewing the applicants for the Intake Screening Supervisor position, her "first choice" was Cisneros. Laskoskie explained that Cisneros "presented herself well during the interview process . . . . She emphasized her role as [a] [L]ead [O]fficer [in the Intake and Court Services Division] for the past four years and how she had stepped in as an acting supervisor . . . ." Further, Laskoskie noted that as the Intake Administrator for the Intake and Court Services Division, she had "worked closely with . . . Cisneros on a daily basis and [Cisneros] had made herself stand out from the rest of the officers with her knowledge and strong work ethic." Cisneros "complete[d] her assigned work in a timely manner and t[ook] the initiative to assist with any other tasks that need to be completed." She was thorough and trained "new employees/interns." Cisneros "demonstrated her leadership skills by filling in during the absence of [s]upervisors," including when a supervisor was "out on military leave from December 2012 to May 2014." During that time, Cisneros "made herself available to work any shift, weekdays, weekends in the role as acting supervisor to assist." Laskoskie considered Cisneros to be "a team player," who had "proven to be an effective, confident, [and] dependable employee."

30

Willing testified, in his affidavit, that after completing the interviews for the Intake Screening Supervisor position, he felt that either Cisneros or Gallardo were "the best [applicants] for the position." According to Willing, both applicants "not only ha[d] a long tenure with [the HCJPD], but ha[d] shown exemplary performance in their work and ha[d] a very good reputation within the [HCJPD]." Both Cisneros and Gallardo "interviewed very well, presented themselves very well, highlighted their skills, answered the screening [committee's] questions thoroughly[,] and impressed [him]."

In regard to Cisneros, specifically, Willing also explained that he was "particularly impressed" with her, as she was a Juvenile Probation Officer for the Intake and Court Services Division, and she "knew the Intake job very well." Further, Cisneros, at the time of her interview, had served as a Lead Officer for the Intake and Court Services Division "for a few years and [had] gained the trust and respect of her fellow officers, as well as management." Cisneros "had proven to be reliable[] [and] hard-working," and she "took the initiative to get things done[] and always went above and beyond her normal duties." Cisneros was "bi-lingual and often assisted in the detention hearing courtroom as well as filled in for th[e] role as detention hearing representative as needed, which [was] a supervisor position." When Cisneros was asked during her interview about the "essential functions" of an Intake Screening Supervisor, she "not only gave an excellent answer but did a great

31

job in relating her skills into the management role." According to Willing, Cisneros did "a great job of separating and standing herself out from her peers through her work, attitude and competence."

Malveaux testified, in her affidavit, that following the screening committee's interviews with the applicants for the Intake Screening Supervisor position, Cisneros was her "top recommendation for the position based on her interview responses and her years and quality of work experience with [the HCJPD]," including the time that Cisneros had spent working in the Intake and Court Services Division. Malveaux further explained that "[i]n addition[] [to] having direct and indirect knowledge of . . . Cisneros's work experience within the [HCJPD], [Malveaux] believe[d] of all of the applicants, [that Cisneros] best demonstrated the capability and characteristics which would allow her to perform at the level of expectation needed for the Intake [Screening] Supervisor position." According to Malveaux, Cisneros "answered the interview questions well," "demonstrated knowledge of all areas of the unit and the workflow process," "produce[d] a high quality work product in a timely and efficient manner," and was capable of making "sound decisions on her own but also kn[ew] when to seek assistance." Cisneros "demonstrated leadership skills as seen from her role as [a] Lead Officer" and "had positive working relationships with all levels of staff and administration."

Broussard testified, in his affidavit, that after the screening committee conducted interviews with the qualified applicants for the position of Intake Screening Supervisor, he met with the committee and "received the names of the finalists" that the committee had selected, i.e., Cisneros and Gallardo. Broussard and the screening committee then "discussed the merits of the two finalists," and Broussard sought Laskoskie's opinion as to which applicant she preferred as she would serve as the supervisor for the individual that was selected. Laskoskie "advised [that] she would prefer . . . Cisneros" and Willing and Malveaux, the other screening committee members, agreed with that recommendation. Thereafter, Broussard "approved" Cisneros for the position of Intake Screening Supervisor.

Smith's sole basis for asserting that Harris County's stated reason for promoting Cisneros to the position of Intake Screening Supervisor, rather than him, was false is based on his subjective belief that she was significantly less qualified than him for the position. In support of his assertion, Smith relies on his own deposition testimony and his resume concerning what he considers to be both his and Cisneros's qualifications. *See Cardenas v. Bilfinger TEPSCO, Inc.*, 527 S.W.3d 391, 402–03 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (employee's conclusory statements in affidavit and deposition not sufficient summary-judgment evidence to raise fact issue regarding causal link). Notably, an employee's subjective belief that his employer has given a false reason for its employment decision is not competent

summary-judgment evidence. *Datar*, 518 S.W.3d at 478; *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 438 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). And generalized assertions that an employer's stated reason for its adverse employment decision is false, do not raise a fact issue. *See Crutcher v. Dall. Indep. Sch. Dist.*, 410 S.W.3d 487, 498 (Tex. App.—Dallas 2013, no pet.).

Here, Laskoskie testified that Smith was not selected as one of the most-qualified applicants by the screening committee because although he was a "tenured employee, bi-lingual[,] and ha[d] experience working in different areas of the [HCJPD]," Smith's "interview answers reflected mainly his job as a probation officer and did not highlight leadership examples or how he ha[d] stepped out of [his] daily duties [as] a probation officer." Further, in regard to Smith's work product and work ethic, which Laskoskie had observed, Laskoskie explained that his "work product and data entry require[d] review[] from a [s]upervisor," there were times when Smith "failed to complete data entry in JIMS II on cases," and Smith's "report writing often need[ed] correction or additional information."

Willing similarly testified that, although Smith had been a Juvenile Probation Officer "for many years and kn[ew] the job well," Willing did not consider him to be "a top" applicant for the Intake Screening Supervisor position. Willing explained that Smith "highlighted in his interview the things [that] he d[id] well as a [Juvenile] [P]robation [O]fficer," but Smith's skills and abilities as a Juvenile Probation Officer

34

did not "translate . . . into how he would be as a manager."  Further, Smith did not address how he had "go[ne] above and beyond or show[n] initiative to get things done," which Willing was looking for in an individual who would be "in a management role."

Finally, Malveaux noted that Smith provided "adequate responses to [his] interview questions" and had "many years of experience with the [HCJPD] and in the Intake [and Court Services Division]."  However, he "did not present any outstanding or exceptional work experience or leadership examples or qualities that would [have] indicate[d] that he would be able to successfully fulfill the expectations" of an Intake Screening Supervisor.

Smith has presented no evidence that Harris County's stated reason for promoting Cisneros to the position of Intake Screening Supervisor, or its stated reason for denying Smith the promotion, were false.  *See Ridley*, 540 S.W.3d at 103; *Donaldson*, 495 S.W.3d at 444; *see also Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 578 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (explaining "[e]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for employer's adverse employment action (internal quotations omitted)).

## D.    Temporal Proximity

In his summary-judgment response, Smith argued that temporal proximity existed between his protected activity, i.e., the filing of his EEOC charges, and the adverse employment action, i.e., Harris County's June 2015 denial of Smith's promotion to the Intake Screening Supervisor position, because although he filed his EEOC charges in 2008 and 2012, his lawsuit stemming from his 2012 EEOC charge was not dismissed until March 24, 2014 and Harris County "retaliated against him at the first opportunity."

Retaliation claims are often provable only through circumstantial evidence that includes the temporal proximity between the protected activity and the alleged retaliatory action. *Univ. of Tex. at El Paso v. Esparza*, 510 S.W.3d 147, 159 (Tex. App.—El Paso 2016, no pet.). While temporal proximity may indeed raise an inference of retaliation, the events must be very close in time. *Tex. Dep't of Criminal Justice v. Flores*, 555 S.W.3d 656, 668–69 (Tex. App.—El Paso 2018, no pet.); *see also Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 529 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (noting proximity may establish causal connection when protected activity and adverse employment action are separated by weeks, as opposed to months and years).

It is undisputed that on April 7, 2008, Smith filed a charge of discrimination with the EEOC, and on April 2, 2012, he filed a second charge of discrimination

36

with the EEOC. In June 2015, Smith did not receive the promotion for the position of Intake Screening Supervisor. The denial of Smith's promotion occurred more than seven years after his filing of his 2008 EEOC charge and more than three years after his filing of his 2012 EEOC charge. Although retaliation need not be immediate to be actionable and there is "no hard-and-fast-rule" that any specified amount of time is too removed to find an inference of causation, courts have routinely held that even a gap of several months between an employee's protected activity and an employer's adverse employment action is too long by itself to establish a prima facie case of a causal connection. *See Jackson v. Honeywell Int'l, Inc.*, 601 Fed. Appx. 280, 286–87 (5th Cir. 2015) ("We have found a five month period between the protected activity and the adverse employment action insufficient to establish a causal link."); *Barnes v. Tex. A & M Univ. Sys.*, No. 14-13-00646-CV, 2014 WL 4915499, at *5–6 (Tex. App.—Houston [14th Dist.] Sept. 30, 2014, pet. denied) (mem. op.) (two-year gap did not establish necessary causal link); *Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 522–23 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding four months between filing of claim and termination did not raise fact issue as to causal link); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (protected activity and employer's adverse action must be "very close" in time to support causation).

Smith asserted in his summary-judgment response that despite the significant gap in time between Smith's 2008 and 2012 EEOC charges and Harris County's June 2015 denial of Smith's promotion, the lawsuit stemming from his 2012 EEOC charge was not dismissed until March 24, 2014. And because Smith "did not apply for another position [with the HCJPD] until 2015[,] . . . after his lawsuit [had] ended," Harris County did not have an opportunity to retaliate against him until it denied him the promotion of the Intake Screening Supervisor position in June 2015. In support of his argument, Smith attached to his summary-judgment response a petition, which is undated and lacks any file stamp, purportedly from his 2012 lawsuit and an "Order Granting Plaintiff's Notice of Dismissal Without Prejudice" signed by the trial court on March 24, 2014.

We note that this evidence shows at most that Smith's lawsuit purportedly arising from his 2012 EEOC charge was dismissed over a year before Smith did not receive the promotion to the Intake Screening Supervisor position. And Smith presented no evidence that the June 2015 denial of the promotion was, as alleged, the "first opportunity" that Harris County had to retaliate against him. *See Flores*, 555 S.W.3d at 669 ("[I]t also is true that there is no hard-and-fast rule that any specified amount of time is too removed for an inference of causation[,] [e]specially where a defendant retaliates at the first opportunity that is presented . . . ." (internal quotations omitted)). In any event, even if we did only look at the year-long gap

between the conclusion of Smith's 2012 lawsuit and Harris County's failure to promote Smith to the position of Intake Screening Supervisor in June 2015, that evidence has little, if any, probative value regarding causation. *See, e.g.*, *Alamo Heights*, 544 S.W.3d at 790 (eight-month gap "is so long as to be of little, if any, probative value"); *Bermudez v. Tex. Mut. Ins. Co.*, No. 03-17-00687-CV, 2018 WL 4140665, at *3 (Tex. App.—Austin Aug. 30, 2018, no pet.) (mem. op.) (five-month gap had little, if any, probative value); *see also Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 67 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (only where there is "[l]ittle or no lapse in time between the [employee's] . . . claim and the employer's adverse employment action" is there "circumstantial evidence of a retaliatory motive").

Further, we note that temporal proximity, standing alone, is not sufficient proof of but for causation, particularly where evidence shows legitimate reasons for an employer's adverse employment action. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *Willis v. Nucor Corp.*, 282 S.W.3d 536, 546 (Tex. App.—Waco 2008, no pet.) (temporal proximity of filing claim and employer's adverse employment action alone not sufficient to raise genuine issue of material fact); *see also Perry v. Univ. of Hous.-Downtown*, No. 01-08-00807-CV, 2009 WL 3152166, at *5 (Tex. App.—Houston [1st Dist.] Oct. 1, 2009, no pet.) (mem. op.) ("A year between protected activity and a disciplinary action [was] not

sufficiently proximate to show a causal link without other evidence that the firing was retaliatory."). Here, we have concluded that there is no evidence that Harris County failed to follow its policies and procedures when hiring for the Intake Screening Supervisor position in June 2015, there is no evidence of any discriminatory treatment in comparison to any similarly-situated employee, and there is no evidence that Harris County's stated reason for promoting Cisneros to the position of Intake Screening Supervisor, or its stated reason for denying Smith the promotion, was false.

We conclude that the temporal proximity between Smith's 2008 and 2012 EEOC charges and Harris County's June 2015 denial of Smith's promotion is insufficient to raise a fact issue as to causation.

### E.    Knowledge of EEOC Charges

Smith also asserted in his summary-judgment response that two of the three members of the screening committee, i.e., Laskoskie and Malveaux, knew that Smith had previously filed his 2008 and 2012 EEOC charges, and Broussard, "who had the final say" as to who was hired for the Intake Screening Supervisor position, was aware that Smith had previously filed EEOC charges.

Laskoskie, in her affidavit, testified that she was a member of the screening committee in June 2015. Following the interviews conducted by the screening committee, Smith was not selected as one of the most-qualified applicants for the

Intake Screening Supervisor position because "[h]is interview answers reflected mainly his job as a probation officer and did not highlight leadership examples or how he ha[d] stepped out of [his] daily duties [as] a probation officer." Further, Laskoskie reviewed Smith's work and work product, and although Smith met the daily expectations as a Juvenile Probation Officer, his "work product and data entry require[d] review[] from a [s]upervisor," there were times when he "failed to complete data entry in JIMS II on cases," and his "report writing often need[ed] correction or additional information."

Although Laskoskie testified that she was aware that Smith had previously filed an EEOC charge and a previous lawsuit, she also testified that she had never had any discussions with him or anyone else regarding Smith's filing of any EEOC charge or any lawsuit other than with the Deputy Director of HR and Broussard, who told her that she "need[ed] to provide information and an affidavit for the previous lawsuit filed by" Smith. Laskoskie specifically stated: "The fact that I knew of . . . Smith's previous filings played no role in my decision for selecting my top picks for the Intake Screening Supervisor position." Malveaux similarly testified that she was a member of the screening committee in June 2015, and Smith was interviewed for the position of Intake Screening Supervisor along with ten other applicants. According to Malveaux, the screening committee did not recommend Smith for the position because he "did not present any outstanding or exceptional

41

work experience or leadership examples or qualities that would [have] indicate[d] that he would be able to successfully fulfill the expectations of the position."

Although Malveaux was aware that Smith "had filed a previous EEOC charge as well as a previous lawsuit," she "never had any discussions with . . . Smith nor anyone else in the [HCJPD] regarding [his] filing of any EEOC charge or any lawsuit other than Dr. Mathew Shelton, Deputy Director of [HR], when he informed [her that she] would need to provide information and an affidavit for the previous lawsuit filed by . . . Smith." According to Malveaux, "[t]he fact that [she] knew of . . . Smith's previous filings played no role in [her] decision for selecting [her] top picks for the Intake Screening Supervisor position."

Willing, the third member of the screening committee, testified that at the time the committee interviewed the applicants for the Intake Screening Supervisor position, he "was not aware that . . . Smith had filed any complaints or charges, including any EEOC charge against th[e] agency or any other entity."

Broussard, in his affidavit, testified that in 2015 he was the Deputy Director of Intake and Court Services Division in the HCJPD, and as deputy director, he was "authorized to make the final decision to select the best [applicant] for the position" of Intake Screening Supervisor. When Broussard met with the screening committee after they had interviewed the applicants, the screening committee recommended that either Cisneros or Gallardo be hired for the Intake Screening Supervisor

42

position.  "Smith's name was not included as one of the finalists submitted by the screening committee."  Broussard ultimately selected Cisneros for the position.

Broussard further testified that at the time that the screening committee conducted its interviews with the applicants, he was aware that Smith had "filed previous EEOC complaints as well as a lawsuit against [Harris] County with allegations of discrimination and retaliation."  However, "[a]t no time did [he] ever disclose [his] knowledge or discuss [his] knowledge of . . . Smith's previous filings with anyone on the [screening committee] for the Intake Screening Supervisor position posted in June of 2015."

While a decision maker's knowledge of a protected activity may be relevant to the causation inquiry, knowledge of an employee's protected activity, such as the filing of an EEOC charge, standing alone, is not sufficient to demonstrate the requisite causal link of a prima facie retaliation case.  *See Ridley*, 540 S.W.3d at 103 (knowledge of discrimination complaint did not support causal link where no evidence employee treated differently than other similarly-situated employees, no evidence employer failed to follow usual policies and procedures, and no evidence reasons given were false); *Donaldson*, 495 S.W.3d at 444; *see also Bartosh v. Sam Hous. State Univ.*, 259 S.W.3d 317, 329 (Tex. App.—Texarkana 2008, pet. denied) (noting while employer's knowledge of complaint "may be necessary to support an inference of causation," it, standing alone, is not sufficient); *Lone Star Steel Co. v.*

*Hatten*, 104 S.W.3d 323, 327–28 (Tex. App.—Texarkana 2003, no pet.) ("Mere knowledge . . . does not, however, establish a causal link . . . but is only one factor to be considered in light of the record as a whole.").

We conclude that Smith has not raised a fact issue as to causation based on Laskoskie's, Malveaux's, or Broussard's knowledge of his 2008 and 2012 EEOC charges or any resulting litigation. *See Donaldson*, 495 S.W.3d at 444.

\* \* \*

Because Smith failed to present evidence raising a fact issue as to whether a causal link existed between his protected activity, i.e., the filing of his 2008 and 2012 EEOC charges, and Harris County's adverse employment action, i.e., the June 2015 denial of a promotion to Smith for the Intake Screening Supervisor position, we conclude that Smith cannot establish his prima facie case for retaliation. Accordingly, we hold that the trial court did not err in granting Harris County summary judgment.

Because we have concluded that Smith failed to present evidence raising a fact issue concerning the requisite causal link for his retaliation claim, we need not address his assertion that "Harris County's non-discriminatory reason for not choosing [him] for promotion" to the Intake Screening Supervisor position in June 2015 was pretextual. *See* TEX. R. APP. P. 47.1.

We overrule Smith's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.